[Civ. No. 12798. First Dist., Div. One. July 13, 1945.]

WILLIAM CONWAY et al., Respondents, v. MYRL MOORE, as Administratrix, etc., Appellant.

Waldo F. Postel for Appellant.

John Langer for Respondents.

PETERS, P. J.—The judgment appealed from determines that plaintiffs William Conway and R. C. Conway own a certain parcel of improved real property in San Mateo County, in the town of Montara, and orders the defendant, the administratrix of the estate of Faye Love or Faye Warren, to convey the same to plaintiffs. Defendant appeals.

The complaint is entitled "Complaint for Specific Performance." It alleges that the decedent was the daughter of plaintiff R. C. Conway, but not the daughter of plaintiff William Conway (being her daughter by a previous marriage); that on February 15, 1924, the plaintiffs entered into a written contract with Clara Belle Hoskinson to purchase the real property in question for a total purchase price of $510, $100 of which was paid down, the balance to be paid at the rate of $20 a month until $250 had been paid, the then balance to be paid at the rate of $10 a month; that interest was to be charged only on deferred payments; that until February 8, 1928, plaintiffs were husband and wife; that on that date a final decree of divorce was entered; that during their married life the plaintiffs paid Clara Belle Hoskinson the sum of $320 on the purchase price of the property; that on October 19, 1925, Faye Warren, also known as Faye Love, daughter of plaintiff R. C. Conway, paid Clara Belle Hoskinson the balance of the purchase price of $190 and received a deed to the property which deed was recorded on November 27, 1925; that the deed attached as an exhibit named Faye Warren as grantee "Sub-

ject to agreement of sale made and entered into on the 15th day of February, 1924, between Clara Belle Hoskinson and Wm. Conway, and R. C. Conway, his wife, of San Francisco, Calif.'' The circumstances under which Faye paid the $190 are set forth as follows: ''That it was mutually and orally agreed by and between plaintiffs and deceased on or about the 19th day of October, 1925 that the sum of $190.00 so paid by the deceased to said CLARA BELLE HOSKINSON as aforesaid to apply as an advance on rent to be paid by deceased to plaintiffs at the rate of $10.00 per month; that after nineteen months of occupancy of said real property by deceased, deceased was to pay plaintiffs the sum of $10.00 per month as long as she occupied said premises; that in accordance with said oral agreement, deceased entered into possession of said premises on or about the 19th day of October, 1925 and remained in occupancy thereof for a period of nineteen months to on or about the 19th day of May, 1926, at which time it was further mutually and orally agreed by and between deceased and plaintiffs for and in consideration of the love and affection which plaintiffs bore to deceased, that deceased could reside in said premises thereafter on a month to month basis without payment of rent provided deceased paid all taxes, assessments, insurance, repairs, upkeep, improvements and all expenses in connection with said premises during occupancy by deceased; that pursuant to said latter agreement, deceased occupied said premises until the date of her death, on December 25, 1942, and paid all taxes, assessments, insurance, repairs, upkeep, improvements and all expenses in connection with said premises; that during the entire occupancy of the premises by deceased, she was the tenant of plaintiffs.''

The prayer is that the administratrix be directed to convey the property to plaintiffs. The judgment grants that relief in addition to quieting title in the plaintiffs.

The evidence substantiated all of the main allegations of the complaint. It shows that the Conways had rented the real property involved from Mrs. Hoskinson for several years prior to February of 1924 when the formal agreement of purchase was executed. The property was improved with a small cottage and the Conways used it as a week end and summer place. Mrs. Conway's daughter, the decedent herein, lived with the Conways. She married and had a son. She separated from her husband, and prior to October, 1925, she and her

child again went to live with the Conways at their home in San Francisco. The child was not well and Mrs. Conway and her daughter came to the conclusion it would be best for the child's health if Faye took him to Montara in San Mateo County. Faye had received $500 from her husband upon her separation. It was under these circumstances that Faye and her child took up their residence on the property and the oral arrangement of October, 1925, was entered into. Faye paid Mrs. Hoskinson the $190 and for this was to occupy the premises rent free for 19 months, the parties having agreed that $10 a month was a fair rental. At the end of the 19-month period Faye was unable to pay the $10 a month rental except for a short period of about three months when she was married to Mr. Love. This marriage was of short duration, and, after separating from Love, Faye and her son continued to occupy the premises.

In the meantime, the Conways were having marital difficulties. They separated sometime in 1925, an interlocutory decree of divorce was secured in 1926, and the final decree of divorce was entered in 1928. The divorce decree did not make provision for a division of property, the parties by agreement having divided their property. They owned two parcels of San Francisco property, and Mrs. Conway took one parcel and Mr. Conway the other. They agreed they would continue to hold their interests in the San Mateo property in common. Mrs. Conway continued to go to the cottage on many week ends, and Mr. Conway, and his daughter by a former marriage, also visited the place on many week ends. The decedent and her son lived at the house continuously after 1925, until her death in 1942. The plaintiffs then went into possession.

After the 19 months had expired, for which, according to the Conways, the $190 had been paid as advance rent, decedent was unable to pay the agreed upon $10 a month rent. Under such circumstances the Conways agreed with decedent that she and her son could remain in the premises if Faye would pay the taxes, keep the house insured and in repair. After the 1925 deed to Faye was recorded, the property was assessed to her, and thereafter the insurance policies were either in R. C. Conway's name or hers and Faye's. The Conways apparently paid the taxes. There is ample evidence that the Conways, particularly Mrs. Conway, claimed the property after 1925 and that Faye was looked upon as a tenant.

Under such a factual situation what are the legal rights of the parties? It is apparent that the persons involved, until after Faye's death, did not analyze the situation or consider in detail their legal rights. They entered into a friendly family arrangement. They wanted to help out Faye and her son. Faye was hard pressed for money, and her son needed sunshine. Under such circumstances, the agreement of 1925 and the subsequent modification were entered into. The evidence amply supports the finding that the $190 paid by Faye was paid as advance rent, and that at all times she occupied the premises with the consent of the Conways and as their tenant. There is no evidence that she ever claimed any interest in the property adverse to the Conways.

The complaint, as noted above, is called a "Complaint for Specific Performance." The defendant contends that the complaint is deficient in that it is not alleged (nor is it found) that there was an adequate consideration, or that the contract was just and reasonable. It is also pointed out that the terms of the supposed contract are not certain; that it cannot be ascertained whether plaintiffs seek specific performance of the contract with Mrs. Hoskinson or the oral contract with Faye; that plaintiffs do not allege that Faye ever agreed to convey to them. It must be conceded that the complaint is by no means a model pleading. The exact theory upon which it proceeds is not as clear as might be desired. It seems to be based on the theory that Faye purchased the property subject to the Conway contract of sale of which she had notice, and to which her deed was made subject. The purchaser with notice of an outstanding contract of sale is, of course, made to recognize it without the necessity of an express promise on his part to convey. Thus the complaint is apparently drawn on the theory of specific performance of the original Hoskinson contract against a grantee of the legal title with notice. Faye, under this theory, paid Mrs. Hoskinson the balance of $190 and became, in effect, the assignee of the Conway-Hoskinson agreement. The Conways then paid her the $190 in free rent for 19 months, this constituting an oral modification of the method of payment provided for in the Hoskinson agreement. A contract in writing may be altered by a contract in writing, or by an executed oral agreement. (Civ. Code, § 1698.) This is a complete answer to the contention that the oral agreement violates the statute of frauds.

■ This theory, while supported by the evidence, does not seem to describe adequately the legal relations of the parties. The facts alleged in the complaint and shown by the evidence support another and perhaps more realistic theory. Under this theory the payment of the $190 by Faye was made in satisfaction and discharge of the Conway-Hoskinson contract. The payment by Faye was an advance or loan to the plaintiffs. This loan, it was agreed, was not to be repaid in cash but by permitting Faye to occupy the premises rent free for 19 months. As security for the advance, Faye took the deed in her name subject to the Conway-Hoskinson contract. In legal effect this deed constituted a mortgage given as security for the advance. ■ It may always be shown by parol by clear and convincing evidence that a deed absolute is a mortgage given to secure an obligation to the grantee. (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1 [147 P.2d 583].)

■ Under this conception of the facts Faye held a double relation to the Conways—as mortgagee for the money advanced, and as trustee for the legal title for the Conways. Under such circumstances the following rule, stated in 17 California Jurisprudence, page 752, section 54, and amply supported by authority, is applicable: ''Where a conveyance is executed from the vendor direct to the lender, to secure a loan of the purchase money made by the lender to the purchaser, the legal title is held not only for the lender as security but in trust for the borrower for the purpose of finally having the title go to him. The rule that when upon a purchase of real property the purchase money is paid by one person and the conveyance is made to another, a resulting trust immediately arises in favor of the one by whom the purchase money is paid, applies; and the grantee holds a double relation to the purchaser, being trustee of the legal title and mortgagee for the money advanced for its purchase. The resulting trust arises by operation of law and the facts creating it may be shown by parol.''

Appellant urges that the action is barred by the statute of limitations or by plaintiffs' laches. Whether the action be viewed as one for specific performance of an outstanding contract of sale, or to obtain a conveyance upon satisfaction of an obligation for which the land was held as security, it is clear that the statute of limitations has not run. ■ If the action is for specific performance, the rule is that a vendee who has fully performed his part of the contract is the bene-

ficiary of a trust in the legal title which is held for him by the vendor. The statute of limitations does not run until such trust is clearly and unequivocally repudiated by the vendor. (See cases collected, 16 Cal.Jur. § 61, p. 458; 23 Cal.Jur. § 10, p. 427.) In the instant case the evidence is clear that there was no repudiation until after the death of Faye and until shortly before this action was filed.

The result is the same if the proceeding be considered as an action to secure a conveyance upon satisfaction of an obligation for which the land was held by Faye as security. Under this theory Faye was a resulting trustee and the action one to enforce a resulting trust. The rule as to such trusts is that the period of limitations commences to run from the time the trustee repudiates the trust, or, more accurately, from the time the beneficiary acquires knowledge or notice of the repudiation. Mere lapse of time, without repudiation does not affect the rights of the beneficiary. (See many cases collected and commented upon, 25 Cal.Jur. § 133, p. 271.)

Whether plaintiffs were guilty of laches, under the circumstances here involved, was a question of fact for the trial court.

Defendant contends that if the action is one to specifically enforce the contract of sale, the complaint is insufficient to state a cause of action in that it is not alleged that the consideration was adequate or the contract was just and reasonable. Such allegations are usually indispensable; in fact, it is not sufficient simply to allege generally that the contract is just and reasonable and the consideration is adequate, but the complaint should allege the facts which show that the contract is fair and the consideration adequate. (Cases collected 23 Cal.Jur. § 53, p. 495.) However, where the facts are sufficiently pleaded there is no necessity of alleging in so many words that the contract was supported by adequate consideration and is, as to the defendant, fair and just. (Many cases cited 23 Cal.Jur. 496, f.n. 1.) This complaint alleges that the agreement between Faye and plaintiffs was that Faye was to occupy the house for nineteen months rent free in consideration of the $190 payment made by her. Such agreement appears to be fair and reasonable and upon adequate consideration. The contract between the plaintiffs and Hoskinson was also fair. This contract, attached to the complaint, states a purchase price of $510. The evidence shows

an assessed value of $1,500, and that the property was appraised in Faye's estate at $2,500. Moreover, and in any event, fairness and adequacy of consideration need not be alleged where an agreed upon consideration has been accepted, the acceptance constituting a waiver of any claim of inadequacy. (*Peters* v. *Binnard,* 219 Cal. 141 [25 P.2d 834]; *Fleishman* v. *Woods,* 135 Cal. 256 [67 P. 276]; *Nicholson* v. *Tarpey,* 70 Cal. 608 [12 P. 778]; *Meridian Oil Co.* v. *Dunham,* 5 Cal.App. 367 [90 P. 469].) It should be pointed out that the absence of more specific allegations of fairness and adequacy were not made a ground of special demurrer.

 Defendant strenuously objects that both the complaint and the evidence are insufficient in that it was not alleged or proved that Faye promised to convey to plaintiffs. If the action be considered one for specific performance of the outstanding contract to convey land the title to which Faye secured with notice, no such promise was necessary. If the action is considered to be one as arising from a loan made by Faye to plaintiffs, and as security Faye took title, such a promise arises by necessary implication and by operation of law.

The judgment appealed from is affirmed.

Ward, J., and Bray, J. pro tem., concurred.